UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JOHN CONTINO,

              Petitioner,        **MEMORANDUM AND ORDER**

  - against -                 07 Civ. 7084(NRB)
                                    04 CR 273 (NRB)
UNITED STATES OF AMERICA,

              Respondent.
------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    John Contino ("Contino" or "petitioner") was charged along
with nineteen co-defendants in a twenty-seven count indictment
filed on March 24, 2004.[1]  The indictment included racketeering,
loansharking, gambling, extortion and related conspiracies counts.
Contino himself was named in ten counts.[2]

    Following a lengthy period for the conduct of pretrial
discovery and pretrial motions,[3] and the entry of guilty pleas by
more than half of the co-defendants,[4] jury selection was scheduled
to commence on January 3, 2007.  After six weeks of negotiation

---

    [1] <u>United States v. Colombo</u>, No. 04-CR-00273-04(NRB)(S.D.N.Y. filed March
24, 2004).

    [2] Specifically, Contino was charged with Counts 1, 2, 20-24, and 25-27.

    [3] Pre-trial proceedings began in April, 2004, and continued up to the date
jury selection began, January 3, 2007.  Opening arguments were made on January
16, 2007.

    [4] Defendants Anthony Sedia, Eddie Robinson, Geoffrey Hawthorne, Vincent
LaRosa, Bryan Kelly, Robert Di Martino, Paul Seipman, Leo Caldera, Anthony
Defranco, and Joseph Hernandez all pled guilty in or around March, 2006.
Defendant Gerald Clemenza pled guilty on November 3, 2006.  Additionally,
unbeknownst to the government, one of the nineteen indictees had died before the
indictment was filed.

between Contino's counsel and prosecutors, on December 5, 2006 Contino signed a plea agreement, and entered a plea of guilty to Count One of the indictment. The government then dismissed the remaining nine counts pending against him.

The following month trial proceeded as scheduled against the six remaining co-defendants. The jury, unable to reach a unanimous decision on many counts in the indictment, returned a partial verdict on February 27, 2007. As to those counts on which the jury was unanimous, it found Christopher Colombo and John Berlingieri guilty on Count Three (gambling conspiracy), and Count Four (operating an illegal gambling business), but found various co-defendants not guilty on Counts One, Five, Six, Nine, Ten, and Twelve respectively. On Count One, the substantive RICO count to which Contino had pled, the jury unanimously found Anthony Colombo and John Berlingieri not guilty, but did not reach a unanimous verdict on two other co-defendants named in that count.

Months later and just three days before Contino was scheduled to be sentenced, on May 14, 2007 this Court received a letter indicating that Contino wanted to switch attorneys, and that now, six months his plea, Contino might seek to withdraw his plea. However, after two conferences with this Court, and recognizing the risk inherent in challenging his plea prior to sentencing, and thereby perhaps losing the reduction in his offense level for acceptance of responsibility, Contino and his new counsel

ultimately decided to refrain from challenging the plea until after Contino's sentencing. On June 21, 2007, consistent with his plea agreement Contino was sentenced to 37 months in prison.[5]

Thereafter, on August 7, 2007, Contino filed this petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 seeking to vacate his guilty plea and sentence on the grounds of ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668 (1984). Contino alleges that he received ineffective assistance, and therefore his guilty plea was not voluntary and intelligent. See Brady v. United States, 397 U.S. 742, 748 (1970)(holding that only an intelligent guilty plea is constitutionally valid). Contino advances three arguments to support the contention that he received ineffective assistance. First, he claims that his counsel failed to explain to him the elements of the offense to which he pled guilty, 18 U.S.C. § 1962, (the Racketeer Influenced and Corrupt Organizations Act ("RICO")), and also failed to explain the elements of the predicate racketeering acts that underlie the RICO offense. Second, Contino claims that his counsel failed to investigate the factual basis for the monetary loss amount suggested by the government in the plea agreement. Third, Contino claims that his counsel misled him as to the likelihood of this Court sentencing him below the 37-46 month range that was

_____

[5] Contino was also sentenced to three years of supervised release, a mandatory special assessment of $100, and restitution in the sum of $220,832.40. Sentencing Tr. 11:11 - 12:25 June 21, 2007.

stipulated in the plea agreement, and counsel further misled him as to counsel's ability to argue for a sentence below that range despite explicit restrictions in the plea agreement that forbade any such arguments.

For the reasons set forth below, we deny Contino's petition in its entirety.

## Background[6]

### A. The Indictment and Pre-Trial Proceedings

The original indictment in United States v. Colombo et. al., 04 CR 273 (NRB)(S.D.N.Y. filed Mar. 24, 2004) was 55 pages long. It began with a history of the Colombo Organized Crime Family, including the factional war between Carmine Persico and Victor Orena, and alleged that some of the 19 indictees in this case, including Contino, were part of a criminal organization that the government dubbed the "Colombo Brothers Crew," an "offshoot" of the Colombo Organized Crime Family. The enterprise existed to enrich its members and augment its powers and its members engaged in a host of criminal conduct to further its purposes.[7] The indictment

---

[6] The following facts are taken from the record in U.S. v. Colombo, as well as the submissions of both parties. This Court held oral argument on Contino's habeas petition on October 23, 2007, and the parties agreed that the facts are for the most part not in dispute. Oral Arg. Tr. 17:7-9, Oct. 23, 2007.

[7] Id. During trial the government dropped the references in the indictment to La Cosa Nostra.

specified the ranks assigned to the different indictees within the crime family, and labeled Contino as an "associate."[8]

The charges against each indictee, including Contino, were specific, and comprehensively laid out. The focus here is on those aspects of the indictment to which John Contino pled, namely Count I, the substantive RICO count, and Racketeering Acts Eight (conspiracy to extort EDP) and Nine (extortion and fraud in connection with the no-show job of Anthony Colombo's immediate family member). In Racketeering Act Eight, the indictment alleged that Contino and others committed extortion of the EDP Entities ("EDP Entities"), a consortium of New York construction businesses owned by Dominic Fonti.[9] Contino and his co-defendants used corrupt influence over, and extortionate control of EDP Entities to obtain hundreds of thousands of dollars in compensation for themselves, and no-show jobs for members of Anthony Colombo's family and other employment benefits for members of the racketeering enterprise. Racketeering Act Nine alleged that Contino by means of extortion and/or mail fraud caused the EDP Entities to pay an immediate family member of Anthony Colombo tens of thousands of dollars. The government further alleged that after Contino gained extortionate control of the EDP Entities, he used that control to defraud DoubleClick, Inc., ("DoubleClick") a

---

[8] Indictment ¶ 11(d).

[9] EDP Entities refers collectively to EDP Construction, Inc.; EDP Facilities Management, Inc.; and EDP Interiors, Inc. Indictment ¶ 49.

publicly-traded internet advertising company by the submission of fraudulent invoices for services allegedly rendered by the EDP Entities to DoubleClick and by paying kickbacks to an employee of DoubleClick .[10]

For his counsel, Contino retained Vincent J. Martinelli, Esq., ("Martinelli"), an experienced criminal defense lawyer.

The volume of discovery, the number of defendants, the number of pretrial motions, a necessary counsel change due to the indictment of counsel for a lead defendant, all resulted in an extended pretrial period. Contino does not raise any issue with respect to Martinelli's performance during this entire period. Indeed, Martinelli attended all conferences, spoke up on behalf of his client, and submitted a thorough "Omnibus Motion" on Contino's behalf in August, 2005.[11] The Court ruled on Contino's motion, in

---

[10] The counts of the indictment were as follows: Count One (the substantive RICO count) included four predicate racketeering acts against Contino: (1) conspiracy to extort EDP; (2) extortion and mail fraud in connection with the no-show jobs of Anthony Colombo's wife; (3) extortion and mail fraud in connection with the no-show job of Philip Dioguardi; and (4) commercial bribery and mail fraud in connection with the fraudulent billing of DoubleClick, Inc. Count Two charged Contino with a RICO conspiracy. Counts Twenty through Twenty Four involved the EDP extortion and related fraud charges. Counts Twenty Five through Twenty Seven contained the DoubleClick charges.

[11] Contino's Omnibus Motion sought orders: (1) dismissing the indictment; (2) suppressing all evidence; (3) suppressing the use of evidence derived from recordings of Phillip Dioguardi; (4) prohibiting the forfeiture of any monies and substitute assets of John Contino under 18 U.S.C. §§ 1962 and 1963; (5) requiring the government to provide a written summary of any expert testimony it intended to offer; (6) striking surplus language from the indictment, and to preclude the Government from making references to "La Cosa Nostra," "Mafia," and "Colombo Brothers Crew" at trial; (7) requiring the government to provide Contino with a Bill of Particulars related to all counts of the indictment in which Contino was allegedly involved; (8) requiring the Government to give notice of its intention to use evidence of Contino's other crimes, wrongs, or bad acts; (9) instructing the attorney for the government to refrain from making any direct or indirect references to extraneous crimes or misconduct by Contino or defense witnesses;

conjunction with similar motions made on behalf of other defendants, in a 51 page opinion dated July 18, 2006.

## B. Contino's Plea Negotiations

As the trial date neared, Contino's counsel and the government pursued plea negotiations.  On October 19, 2006, the government offered Contino a plea agreement with a stipulated range of 37-46 months imprisonment.  At this time, the government also informed Contino that if he proceeded to trial and was found guilty, his sentence range would be somewhere "in the vicinity of 97 months."[12] Upon receipt of this offer, Martinelli apparently told the Assistant United States Attorneys that the offer was "within the ballpark," and it "sounds like we're close."[13] Martinelli asked for

_____

(10) for a hearing to determine whether the government may properly admit into evidence expert testimony with respect to allegedly "coded" conversations; (11) for a hearing to determine the audibility of tapes and provide transcripts thar the government intends to offer at trial at least 3 months prior to the date of the scheduled trial; (12) disclosing the names, date of birth, and criminal records of any confidential sources or informants from whom the Government intends to elicit testimony at trial; (13) directing the Government to make confidential informants available to the defense so that they may be interviewed prior to trial; (14) requiring full disclosure of any relationship or agreements between the government and any witnesses, co-defendants or unindicted co-conspirators; (15) for the disclosure of exculpatory evidence; (16) for the disclosure of all Jencks Act material; (17) requiring the government to produce and permit the defendant and his counsel to inspect certain items; (18) requiring all government agents to retain their rough notes; (19) requesting the government to make available a list of documents it intends to introduce at trial; (20) for severance and a separate trial for John Contino, and in order to determine that motion, requiring the government to produce for the court's in camera inspection any defendants' statement that the government intends to use as evidence pursuant to Rule 14(b); and (21) granting Contino permission to incorporate and adopt motions filed by all co-defendants.

[12] Oral Arg. Tr., 28:21-23, Oct. 23, 2007.

[13] Government Br. at 2 (citing AUSA contemporaneous notes dated October 19, 2006).

a week to give his client time to consider the deal.  The next week, on October 27, 2006, Martinelli counter-offered with a stipulated range of 27 to 33 months imprisonment.  The government rejected Martinelli's counter-offer, and informed Martinelli that it stood firm in its initial offer of 37 to 46 months.

After considering the government's position for several weeks, on November 30, 2006 Contino agreed to accept the government's offer of 37-46 months.  This was confirmed by a letter from Martinelli to the government, dated November 30, 2006, stating that Contino, "intends to plead guilty as per terms and conditions discussed (i.e. generally, level 20, 37-46 months, etc.)."[14]

In response, on December 4, 2006 the government sent Contino a written plea agreement.[15]  The written draft provided that Contino would plead guilty to Count One (the substantive RICO count), and he would allocute to Racketeering Act Eight (conspiracy to extort the EDP Entities), and Racketeering Act Nine (extortion and mail fraud in connection with a no-show job for an immediate family member of Anthony Colombo at EDP Entities).[16]  Further, the plea agreement set forth a criminal history category of I, a loss amount of $800,000 to $1,500,000, and a corresponding offense level of 21.

---

[14] Contino Exhibit C (Letter from Martinelli to United States' Attorney Office).

[15] Under its longstanding policy, the United States Attorney's office sends written plea agreements only *after* an oral agreement has been reached. Government Brief at 3.

[16] Plea Agreement, at 1-2. See Contino Exhibit F.

The offer also contained so-called "Type A" restrictions, which prohibited either side from arguing for a sentence outside of the stipulated 37-46 month range.[17]  Another provision stipulated that Contino would "neither appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range of 37-46 months."[18]

Contino alleges that he and his attorney were disappointed with certain of the terms of the written plea offer when they received it on December 4, 2006.  First, Contino states that December 4, 2006 was the first he heard that the plea offer would contain the "Type A" restrictions.[19]  There is evidence, however, that the restrictions had always been part of the deal, and had been known to Contino prior to December 4.  The government maintains that its offer had always been for a completely restricted, "Type A" plea,[20] and the record contains an e-mail from Martinelli to Contino's new counsel, Michael S. Washor, Esq., in

---

[17] The Plea Agreement acknowledged, however, that the stipulated range was not binding on the Probation Department or on the Court.

[18] Plea Agreement, at 4.

[19] Contino Aff. ¶ 14 ("[Martinelli] stated that this was the first time the government ever presented restrictions to be included in the plea agreement.").

[20] See Oral Arg. Tr. 20:3-23, Oct. 23, 2007.

-9-

which Martinelli writes that he and Contino had in fact discussed the restriction.[21]

Martinelli and Contino's second concern with the written agreement was the stipulated monetary loss amount, and the corresponding "offense level" under the Sentencing Guidelines. During their negotiations, Martinelli and the government had proceeded on the understanding that Contino had a criminal history category of II, and that he would plead to a monetary loss amount which would equal an offense level of 20. The combination would correspond to a Sentencing Guidelines range of 37-46 months. The written agreement, however, indicated that Contino had a lower criminal history category, I not II, but called for Contino to plead to a higher monetary loss ($800,000 to $1,500,000), which would result in an offense level of 21, thereby maintaining the agreed upon Sentencing Guidelines range. Under either combination (II, 20) or (I, 21), the Sentencing Guidelines set forth a range of 37-46 months.

After receiving the draft, Martinelli made numerous calls to the U.S. Attorney's Office in an effort to eliminate the "Type A" restrictions and to reduce the offense level to 20. Martinelli

---

[21] See Government Br., at 2. See also Contino Exhibit D. (Email from Martinelli to Michael S. Washor, Esq. dated June 7, 2007 referencing plea negotiations and stating, "[W]e knew about the A-restrictions, and explicitly discussed.") Exactly when Martinelli and Contino discussed the restrictions is not clear from the email or from Martinelli's affidavit. In any event, there is no issue that before he entered his plea he was well aware of the "Type A" restriction as it was part of the plea agreement he signed and he was specifically allocuted on this aspect of the agreement.

called both Assistant U.S. Attorneys assigned to this case as well as their supervisors. The government, however, would not retreat from its consistent position that Contino had to plead to a Guidelines range of 37-46 months. The government also informed Contino that if he did not plead guilty as scheduled the following day, December 5, 2006, the offer would be taken off the table.

On the evening of December 4, 2006 Martinelli, Contino, and Contino's wife Denise debated whether or not to accept the deal. Contino met with Martinelli at Martinelli's office. After Contino left, Martinelli called Denise Contino to discuss the plea with her. Martinelli pointed out to both Contino and his wife that Contino faced a far greater sentence if he went to trial and was convicted.[22]

Contino claims that he was deeply uncertain about whether or not to accept the plea agreement, and that he felt pressure to accept the plea both from the government and from Martinelli.[23] Contino claims that a pivotal factor in his analysis was Martinelli's assurance that the Court would be free to sentence Contino to a shorter jail term than the agreed upon 37-36 months, and that Martinelli would make submissions to persuade this Court to exercise its discretion.[24]

---

[22] Martinelli Aff. ¶ 9.

[23] Contino Aff. ¶ 14.

[24] Contino Aff. ¶ 19.

**C. Contino's Plea**

Contino decided to proceed with his plea. The next morning, December 5, 2006, he signed the plea agreement, and appeared before this Court to plead guilty to Count One of the indictment.

Before accepting Contino's plea, this Court conducted an extensive allocution as prescribed by Rule 11 of the Federal Rules of Criminal Procedure. After placing Contino under oath, this Court asked Contino a series of questions to determine his competency.[25] Then the Court asked Contino whether he had had enough time to consider the offer, and whether he was satisfied with his legal representation:

> COURT: Have you had sufficient time to discuss the charges against you and your plea with your attorney Mr. Martinelli?
> DEFENDANT: Yes, your honor.
> COURT: Have you been satisfied with the advice and counsel that he has given you?
> DEFENDANT: Yes, your honor.
> COURT: At this time are you ready to enter a plea?
> DEFENDANT: Yes, your Honor.[26]

The Court then described the substance of the plea agreement, and confirmed that Contino would be pleading to Count One of the Indictment, and specifically allocuting to Racketeering Act Eight (conspiracy to extort EDP Entities) and Racketeering Act Nine (extortion and mail fraud in connection with a no-show job at EDP

---

[25] See Plea Hr'g. Tr. 2:21-3:9, Dec. 5, 2007.

[26] Id., at 3:10-19.

Entities) as predicate acts.[27] This Court described the maximum penalties that Contino faced, and then asked the government to state the essential elements of the offenses and predicate acts, which the government did in great detail.[28]

Next, this Court elaborated on the myriad rights that Contino would be entitled to if he went to trial. This Court told Contino that he would have the rights to be presumed innocent;[29] to assistance of appointed counsel at every stage of the proceedings;[30] to compulsory process; to confront, call, and cross-examine witnesses;[31] and to testify or not testify.[32] Further, this Court explained to Contino that at a trial, "the burden would be on the government to prove each and every element of the crimes charged beyond a reasonable doubt in order to convict you."[33] Contino explicitly acknowledged that he understood each of these rights.[34]

This Court then asked Contino about the restrictions contained in the plea agreement: "Do you understand that you have agreed and

---

[27] Id., at 3:22-4:15.

[28] Id., at 5:4 – 6:16. See infra at p. 25-26 for the full description of the elements of the crimes to which Contino was pleading.

[29] Id., at 7:7-10.

[30] Id., at 6:22-25.

[31] Id., at 7:2-5; 7:12-15.

[32] Id., at 7:2-5; 7:12-15.

[33] Id., at 6:18-20.

[34] Id., at 6:17-8:4.

the government has agreed not to seek either a downward or upward departure from the stipulated guidelines range that is set out in the plea agreement?"[35]  Contino responded, "Yes, your Honor, I do."[36]

Finally, this Court confirmed that Contino was pleading guilty because he was, in fact, guilty.  As to Count One, Contino admitted his guilt, and acknowledged that from 1999 to 2002, he "knowingly associated with the racketeering enterprise listed in the indictment. . . .  Specifically, through my actions it was planned for EDP Entities to become controlled for the benefit of the enterprise, [for] employees to be employed in no-show jobs and to have other moneys obtained for the benefit of the enterprise."[37]

Following the allocution, this Court found that Contino understood the nature of the charges against him and the consequences of his plea, and that his plea was made voluntarily and knowingly, and that there was a factual basis for it.[38]


### D. The Trial

On January 3, 2007, jury selection began in U.S. v. Colombo. The trial itself started on January 16, 2007, and lasted approximately three weeks.

---

[35] Id., at 9:22-25.

[36] Id., at 10:1.

[37] Id., at 12:2-24.

[38] Id., at 13:22-14:2.

Even though Contino was not on trial, ample evidence was presented to sustain his guilty plea.[39] The central testimony involving Contino came from Dominick Fonti, the founder of the extorted EDP entities. After describing how he came to do business with Contino and formed a company called EDP Interiors for the work Contino was to bring in,[40] Fonti set out how his experience with Contino began with a business opportunity but deteriorated into something he did "not want any part of."[41] According to Fonti, Contino suggested to Fonti that he hire Anthony Colombo for his contacts at a salary of $500 or $600 per week.[42] After Fonti agreed, Contino suggested that those payments be made to Carol Colombo.[43] According to Contino's instructions, the Carol Colombo checks were either given to him for delivery or put in the United States mails.[44] Fonti further testified that he never spoke to Carol Colombo,[45] and that Anthony Colombo did not have an office at EDP Interiors and that his contact with him was minimal. Fonti

---

[39] The brief review of the trial evidence that follows is not intended to be comprehensive. Due to the pending re-trial of one of the co-defendants, we have deliberately avoided to the extent possible discussion of evidence that was presented at trial of the alleged fraud on DoubleClick, which also involved Contino.

[40] Trial Tr., 1570-71, Jan. 25, 2007.

[41] Id., at 1600.

[42] Id., at 1578.

[43] Id., at 1579.

[44] Id., at 1608.

[45] Trial Tr., 1651, Jan. 26, 2007.

also explained that he was so concerned after he confirmed with Contino the connection between Anthony Colombo and Joseph Colombo (Anthony's father, who had been gunned down years earlier in Columbus Center), that he enhanced his home alarm system.[46] It was Fonti's understanding that Anthony Colombo's father "was someone associated with the Mafia or organized crime."[47] Additionally, Fonti described Contino's statements to him when he missed payments to Carol Colombo either for reasons of cash flow or because the business relationship between Fonti and Contino had ended. On the earlier occasions, Contino stated: "Don't be stupid. Just send him the check and keep him happy,"[48] and "Dominick, don't rock the boat. Just do what you got to do and keep Anthony happy. Pay him the money."[49] Fonti testified to his reaction to Contino's statements: "Well, having at that time the knowledge of Mr. Colombo's – having the knowledge from John of Mr. Colombo's background, I felt very intimidated, and I just eventually caught up with the payments."[50] Fonti further testified about Exhibit 112, a letter sent by Contino after the time that monies were no longer coming into the EDP entities from Contino's contracts and in which Contino wrote:

---

[46] Id., at 1647.

[47] Trial Tr., 1602, Jan. 25, 2007.

[48] Id., at 1604.

[49] Id., at 1604.

[50] Id., at 1606.

"Carol's should be mailed as usual."[51] Fonti testified that after receiving Exhibit 112, which also referenced Anthony Colombo, he felt obligated to make up the six checks he had not paid. As Fonti explained: "Again, I felt obligated because the letters that were sent, the memos that were sent, where Mr. Contino emphasizes, as discussed many times before at least pay Anthony, and he signs – he types Anthony's name on it, I took that as a subliminal threat to me, and I took it as a threat, and therefore I succumbed to it."[52]

Illustratively, in 2000, in addition to the weekly payments to Carol Colombo ($28,000), and salary payments to Contino ($39,186), there were also bonus payments to Contino ($246,000) and Carol Colombo ($13,000) and payments to Anthony Colombo, Jr. ($5,430), and Joseph Colombo, Jr. ($3,350).[53] On top of these cash payments, Contino ordered Fonti to add certain individuals, including co-defendant Christopher Colombo, to the EDP insurance policy. Finally, it should be noted that Fonti continued to make payments to Carol Colombo until May 16, 2001, the day a search warrant was executed at his office in connection with this case.[54]

The case went to the jury on February 13, 2007. Over the course of the next few days, the jury sent numerous notes to the

---

[51] Trial Tr., 1668, Jan. 26, 2007.

[52] Id., at 1668-69.

[53] Id., at 1672-73.

[54] Id., at 1670-71.

Court indicating that it was deadlocked. Finally, on February 27, the tenth day of deliberation, the jury indicated that it wanted to deliver a partial verdict. That morning, in open court, the jury entered a partial verdict on those counts on which it was unanimous, and the Court declared a mistrial on the remaining counts.

With respect to Count One, the substantive RICO charge to which Contino had pled, the jury unanimously found Anthony Colombo and John Berlingieri not guilty, but hung on the other two co-defendants named in the Count.

### E. Contino's Sentence

This Court had scheduled Contino's sentencing for May 17, 2007. On May 14, 2007, this Court received a letter from Martinelli stating that Contino wanted to switch attorneys, and that his new attorney might be filing motions to attack the plea. This Court then held conferences with Contino and his new lawyer on May 17, 2007 and on May 24, 2007. On May 17, this Court told Contino that he should not regret his decision to plea simply because two of his co-defendants were found not guilty at trial: "[T]he fact that you weren't there had a great influence over the way the trial developed . . . . You should not assume that had you gone to trial you would have been acquitted just because the others

were."[55]  On May 24, this Court reminded Contino that he had signed a plea agreement which stipulated that if Contino moved to withdraw his plea, the government could apply to the Court to deny Contino points-off for acceptance of responsibility.  Losing those points would increase Contino's offense level, as well as his sentencing exposure.[56]

After further reflection, on June 12, 2007, Contino's new lawyersinformed this Court that Contino would not challenge the plea now, but rather would proceed with sentencing.

On June 21, 2007, this Court sentenced Contino to a term of 37 months of imprisonment, three years of supervised release, a mandatory special assessment of $100, and restitution in the sum of $220,832.40.[57]

## Discussion

### A. Applicable Law

A defendant who pleads guilty unconditionally waives all non-jurisdictional defects, except those relating to the "voluntary and intelligent character of the guilty plea." <u>United States v. Coffin</u>, 76 F.3d 494, 497 (2d Cir. 1996)(quoting <u>Tollet v. Henderson</u>, 411 U.S. 258, 267 (1973).  A claim that a guilty plea was involuntary

---

[55] Conf. Tr. 4:5-10, May 17, 2004.

[56] Conf. Tr. 4:11-20, May 24, 2007.

[57] Sentencing Tr. 11:11 - 12:25, June 21, 2007.

or unknowing due to counsel's unprofessional representation is evaluated under the two part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984), as applied to guilty pleas by <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). <u>See, e.g.</u>, <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001)(per curiam)("To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, we use the familiar framework established in <u>Strickland</u>."). <u>See also</u> <u>United States v. Zhang</u>, No. 05-662 WL 3071644 (2d Cir. Oct. 23, 2007).

To prevail on a claim of ineffective assistance under <u>Strickland</u>, a defendant must (1) overcome a "strong presumption" that his counsel's conduct was reasonable and show that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms"; and (2) show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687-88, 693-694. <u>See also</u> <u>United States v. Best</u>, 219 F.3d 192, 201 (2d Cir. 2000).

To satisfy the first prong of <u>Strickland</u>, a defendant must demonstrate that his attorney "made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. A court reviewing a claim under this prong must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990)(quoting <u>Strickland</u>, 466 U.S. at 689).

In this context, to satisfy the second prong of <u>Strickland</u>, "a defendant must show that 'there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>United States v. Coffin</u>, 76 F.3d at 498 (quoting <u>Hill v. Lockhart</u>, 474 U.S. at 59).

### B. Analysis

Contino's moving papers characterize Contino as a deer-in-the-headlights who entered into a guilty plea at the very last minute, under duress, and heavily influenced by Martinelli's faulty lawyering.  A far more accurate characterization, however, is that Contino's habeas petition is "the legal equivalent of buyer's remorse." <u>Powell v. Omnicom, BBDO/PHD</u>, 497 F.3d 124, 127 (2d Cir. 2007)(Walker, J.).  Contino entered into a bargained-for, fully-binding plea agreement with his eyes wide open.  At no point until *after* his co-indictees were found not guilty on the substantive RICO count did Contino seek to contest his own guilty plea.

Contino urges three reasons why the counsel he received concerning his guilty plea was deficient under <u>Strickland</u>.  Each ground is meritless, and the arguments at many points distort the record.  We discuss each ground <u>seriatim</u>.

## 1. The Intelligence of the Plea

Contino first maintains that Martinelli never explained to him the precise elements of the RICO offense to which he pled, 18 U.S.C § 962(c), or the elements of the predicate racketeering acts, and therefore his plea was not intelligent. See Brady v. United States, 397 U.S. 742, 748 (1970)(holding that only an intelligent guilty plea is constitutionally valid). Specifically, Contino claims that he never understood RICO's "pattern" requirement, or the legal definitions of the words "enterprise" and "associate" as they are used in the RICO statute.[58] In terms of the predicate racketeering acts, Contino further claims not to have understood that extortion requires the wrongful obtaining of consent through "fear." Contino avers that he would not have pled guilty to wrongfully obtaining anyone's consent through fear, and points out that he never mentioned the word "fear" in his allocution.[59]

Contino relies here in large part on the affidavit of Martinelli, who acknowledges that on the morning of December 5, 2005, he did not review or discuss with Contino the underlying

---

[58] Contino Memorandum of Law, at 6-7. ("[Martinelli] failed to provide Contino with any explanation of RICO's 'pattern' requirement, or to discuss the relationship between that requirement and the facts Contino was prepared to admit."). At oral argument, Contino drew extra attention to the fact that he pled to the RICO statute, which is "probably as arcane a statute from a layman's point of view as there could be in the criminal law." Oral Arg. Tr., 4:19-22, Oct. 23, 2007.

[59] Contino Memorandum of Law, at 7. Despite this protestation, there was ample evidence, some of which has been discussed above, that Dominick Fonti made payments which were induced by Contino's use of threatened fear.

elements of 18 U.S.C § 962(c).[60]  Nowhere, however, does Martinelli's affidavit say that Martinelli _never_ - during the two and a half years between the indictment and the plea - explained the elements to Contino.

The standard for determining the intelligence of a plea is simply whether the defendant "understood the nature of the charges against him."  <u>See</u> <u>United States v. Andrades</u>, 169 F.3d 131, 134 (2d Cir. 1999)(it is "essential . . . that the court determine by some means that the defendant actually understands the nature of the charges.")(citing <u>United States v. Maher</u>, 108 F.3d 1513, 1521 (2d Cir. 1997).  As the Second Circuit held in <u>Andrades</u>, there is no magic formula for a district court to use in determining the intelligence of a defendant's guilty plea:

> A district court is not required to follow any particular formula in determining that [a] defendant understands the nature of the charge to which he is pleading guilty. The court may describe the elements of the offense in the court's own words, or may provide that information by reading the indictment to the defendant where the pertinent count spells out the elements of the offense and the circumstances indicate that this will be sufficient. If the defendant's recitation of his own conduct insufficiently supports the relevant charge, then Rule 11(c)(1) is nonetheless satisfied where the charging instrument plainly describes the offense and defendant acknowledges that he read, understood, and discussed with his attorney that legal document.

---

[60] Martinelli Aff. ¶ 14.

<u>Andrades</u>, 169 F.3d at 135 (internal citations omitted).  Thus, a defendant may come to understand the nature of the charges against him through multiple avenues.  Here, every conceivable avenue was available to Contino, and this Court's determination that the plea was knowing and intelligent was well-founded.

First, the indictment put Contino on sufficient notice of the charges against him.  The indictment was thorough – 55 pages – and precisely laid out the elements of the crimes charged.  Indeed, the indictment contained an entire section entitled "The Pattern of Racketeering Activity," which spelled out the predicate racketeering acts in depth,[61] and made countless references to racketeering "enterprises."[62]  <u>See, e.g.</u>, <u>Bousley v. United States</u>, 523 U.S. 614, 618(1998) (a defendant with a copy of his indictment before pleading guilty is presumed to know the nature of the charge against him)).

Second, over two and a half years passed between the filing of the indictment on March 24, 2004, and Contino's guilty plea on December 5, 2006.  This window provided Contino ample opportunity to learn the nature of the charges against him.  Not only was Contino in possession of the indictment this entire time, but there were active pretrial proceedings and motions brought by multiple defendants seeking to dismiss the charges.  Moreover, Martinelli

---

[61] Indictment ¶ 15.

[62] <u>See, e.g.</u>, Indictment ¶ 14.

has testified that during pretrial proceedings he and Contino explicitly discussed the possibility of filing a motion to dismiss the RICO count – a fact that makes it hard to fathom that Martinelli never explained to Contino what a RICO offense entails.[63]

Third, Contino signed a plea agreement, the very first page of which detailed the elements of a RICO offense under 18 U.S.C. § 1962(c).[64]

Fourth, at his allocution, this Court recited to Contino the charges against him, and had the government set forth the precise elements of the offense and the predicate acts in great detail. The government set forth the elements as follows:

> In the RICO crime charged of Count One of the indictment the elements are as follows: that on or about the dates charged in the indictment an enterprise existed, that the enterprise affected interstate commerce or foreign commerce, that the defendant was associated with or employed by that enterprise, that the defendant engaged in a pattern of racketeering activity, and that the defendant unlawfully, willfully and knowingly conducted or participated in the conduct of the affairs of the enterprise through that pattern of racketeering activity.
> Specifically, your Honor, with respect to Racketeering Act Eight of 18 U.S.C. Section 1951, which is the extortion and conspiracy to

---

[63] Martinelli Aff. ¶ 2. Indeed, although Martinelli testified in his affidavit that he did not describe to Contino the elements of a RICO offense on the morning that Contino pled guilty, Martinelli's statement to that effect is meaningless. There is no requirement that a lawyer must inform his clients of the elements of an offense the very morning that a defendant pleads guilty. See, e.g., United States v. Vonn, 535 U.S. 55, 75 (2002)(defendants may be presumed to recall information provided to them prior to the plea proceeding).

[64] Plea Agreement, at 1.

commit extortion is as follows: The elements are that two or more persons entered into an unlawful agreement to commit the crimes charged, that the defendant knowingly and willfully became a member of that conspiracy, that the defendant wrongfully obtained the property of another, that the defendant obtained this property with the victim's consent, <u>that this consent was expelled [sic] by the wrongful use or threat of force, violence or fear</u>, and finally that as a result of the defendant's actions interstate commerce or an item moving in interstate commerce was delayed, obstructed, or affected in some way.

With respect, your Honor, to Racketeering Act Nine in addition to the extortion elements of which I already enumerated also mail fraud is charged and the mail fraud elements are as follows: That at or about the time alleged in the indictment there was a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretensions, representations, or promises, that the scheme or artifice to defraud or the false statements and representations concerned material facts, that the defendant knowingly and willfully devised or participated in the scheme or artifice to defraud with the knowledge of its fraudulent nature and with the specific intent to defraud, and that he knowingly, intentionally aided and abetted others in the scheme, and finally that the United States mails were used in furtherance of the scheme to defraud.

Plea Tr., 5:4 – 6:16, Dec. 5, 2006 (emphasis added). Thus, the government described to Contino both the "pattern" requirement, as well as the elements of the predicate racketeering acts, and specifically mentioned that extortion required the wrongful obtaining of consent through "the threat of force, violence or <u>fear</u>."

Further, at his allocution, Contino told this Court that he had had sufficient time to discuss the charges against him and his plea with his counsel.[65] He said that he was pleading guilty because he was in fact guilty,[66] and he proceeded to describe his criminal actions in his own words. He specifically mentioned that he engaged in "the affairs of the enterprise by committing the . . . <u>pattern</u> of activities."[67] He described actions he took that constitute Hobbs Act extortion ("I, John Contino, knowingly conspired with codefendants listed in the indictment to extort EDP Entities by conspiring to obtain money with the consent of an officer of EDP Entities, which consent was to be wrongfully induced"),[68] and mail fraud ("I knowingly obtained money from EDP Entities by the unlawful obtaining of consent . . . and that said payments were made through the U.S. mail in the Southern District of New York.").[69]

---

[65] Plea Tr., 3:10-6, Dec. 5, 2006.

[66] Plea Tr., 11:21-24, Dec. 5, 2006.

[67] Plea Tr., 12:7, Dec. 5, 2006.

[68] Plea Tr., 12:9-13, Dec. 5, 2006.

[69] Plea Tr., 12:22 - 13:4, Dec. 5, 2006. We also note for the record the perspective that the fact that Contino himself never mentioned the word "fear" in his recitation of his crimes was in all likelihood good lawyering on the part of Martinelli. There is no requirement that a defendant allocute in such a way as to emphasize the most heinous version of his actions. As this Court stated at oral argument: "[W]ould [it] have been better for Mr. Contino to have described his conduct in the most offensive terms? Do you not think that perhaps it was sensible advice to have a more benign allocution than to have it be quoted either when he is designated within the Bureau of Prisons, or when people read about him, if there is newspaper coverage?" Oral Arg. Tr., 26:10-16, Oct. 23, 2007.

All courts are entitled to rely on sworn statements made by a defendant at an allocution. See Blacklege v. Allison, 431 U.S. 63, 74 (1977) (inculpatory statements made under oath carry "a strong presumption of verity," and a defendant's admissions during a guilty plea, "constitute a formidable barrier" to challenging the validity of the plea). Under this standard, when a defendant allocutes in the course of pleading guilty that his plea is knowing and voluntary, a district court may rely on those statements in summarily rejecting a defendant's subsequent contradictory allegations that his plea was induced or coerced by substandard legal advice. "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997)(holding that post-plea claims that a guilty plea was involuntary because plea was entered out of fear that defense counsel was unprepared to go trial were properly rejected when contradicted by plea allocution that defendant was not coerced or pressured into pleading guilty); see also United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001). Moreover, unlike many defendants who plead guilty in courts across this country every day, John Contino is a highly intelligent man, and native English speaker. He has run businesses with gross receipts in the millions of dollars. His own intellect belies the

notion that he did not know what he was saying while pleading guilty.

In the face of all this evidence, Contino makes arguments that if accepted would undermine guilty pleas generally. He maintains that he never fully understood the legal definitions of "pattern" and "enterprise" as used in the RICO statute,[70] even though he himself uttered the words "pattern" and "enterprise" at his allocution; he claims he felt pressure to plead because Martinelli was unprepared to go trial;[71] and he claims that he was under so much stress on the day he pled that his comprehension was greatly diminished.[72]

These arguments fail – the law must presume that human beings mean what they say, <u>see</u> <u>Blackledge</u>, 431 U.S. at 74, and it cannot require a defendant to write a legal treatise before he pleads guilty. Moreover, pressure is an inherent part of our criminal justice system. A degree of pressure is built into the Sentencing Guidelines, which allow for an additional one-point deduction in offense level if a defendant pleads early enough in the process so that the government does not have to prepare for trial,[73] and

---

[70] Oral Arg. Tr., 3:1-6:3, Oct. 23, 2007.

[71] Contino Aff. ¶ 27.

[72] Oral Arg. Tr., 14:19-22, Oct. 23, 2007 ("[T]he mind of an accused when they are taking a plea is not really quite as focused as all courts believe they are.")

[73] <u>See</u> Sentencing Guidelines § 3E1.1.

pressure has long been an accepted component of pleas. For instance, guilty pleas may be voluntary and intelligent even if made only to avoid the death penalty. <u>See</u> <u>Brady v. United States</u>, 397 U.S. 742 (1970); <u>Parker v. North Carolina</u>, 397 U.S. 790, 795 (1970)("We determined in <u>Brady</u> that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial."). As for Contino's contention that he pled because he had concerns that his lawyer would not be prepared for trial, such arguments have been rejected in similar situations. <u>See</u> <u>United States v. Torres</u>, 129 F.3d 710, 715-17 (2d Cir. 1997)(post-plea claims that a guilty plea was involuntary because plea was entered out of fear that defense counsel was unprepared to go trial were properly rejected when contradicted by plea allocution that defendant was not coerced or pressured into pleading guilty). Additionally, there was ample time for Martinelli to prepare for trial had Contino decided not to plead, as opening statements and final jury selection were scheduled for January 16, 2007.

In the end, Contino's arguments as to the intelligence of his plea are as legally infirm as they are factually circumspect. This Court accepted Contino's guilty plea only after it conducted a proper and thorough Rule 11 inquiry,[74] and after it determined that

---

[74] Rule 11 of the Federal Rules of Criminal Procedure requires that before a court accepts a plea, it must determine that the defendant understands "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(g).

Contino did in fact understand the charges against him.[75]  In making
this determination, the Court relied on numerous and reliable
sources, including Contino's own words at the allocution, the
government's proper recitation of the elements, the specificity of
the charges in the indictment, and the fact that Contino had over
two and half years between the time he received a copy of the
detailed indictment and his plea of guilty.  See United States v.
Adams 448 F.3d 492, 499 (2d Cir. 2006)("We need not rely solely on
defendant's allocution, however, to support the plea, rather any
facts on the record at the time of the plea proceeding may be
used.")(citations omitted).  See also United States v. Vonn 535
U.S. 55, 75 (2002).  Accordingly, we wholly reject Contino's
argument that his plea was not intelligent.

### 2. Martinelli's Failure to Investigate the Loss Amount

Contino's second basis for arguing ineffective assistance of
counsel is that Martinelli failed to make an independent
investigation into the loss amount.  Contino suggests that because
of this failure, Martinelli was unable to offer Contino advice when
the government raised the offense level and corresponding loss
amount in its written plea proposal.[76]  Contino's argument

---

[75] Plea Tr. 13:22-23, Dec. 5, 2006. (The Court found that it was "satisfied
that you [Contino] understand the nature of the charge against you.").

[76] See Contino Memorandum of Law, at 9.  As recounted above, in its initial
plea discussions with Contino the government had suggested that Contino had a
criminal history category of II, and would plead to an offense level of 20. In

emphasizes the fact that whereas the stipulated loss amount that he pled to was $800,000 to $1,500,000, the Probation Office later suggested a restitution amount of only $220,832.40. In view of this lower calculation, and because Martinelli made no independent assessment of the correct loss amount, Contino suggests that Martinelli violated his duty under <u>Strickland</u> to "make reasonable investigations." 466 U.S. at 690-91.

There are numerous infirmities with this argument. First, loss amount and restitution are not calculated in the same way. Restitution is limited to the out-of-pocket loss that resulted from the offense on which a defendant is convicted, here, the fraud on EDP Entities. <u>See</u> 18 U.S.C. § 3663A. By contrast, "loss" under the Sentencing Guidelines is a broader concept, and encompasses all relevant conduct. <u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u>, § 1B1.2 (Nov. 2005)(holding defendant liable for "relevant conduct," which is defined as "all acts and omissions committed . . . by the defendant), and § 2B1.1, comment, (n.3A)(defining "actual loss" as the "reasonably foreseeable pecuniary harm that resulted from the offense"). Here, defendant's relevant conduct for purposes of the loss amount included the fraud on DoubleClick. These varying legal standards account for the

---

its written plea agreement, however, the government revised its position, and suggested that Contino only had a criminal history category of I, but would plead to a higher loss amount sufficient to result in an offense level would be 21. Under either combination of criminal history category and offense level the Sentencing Guidelines range would be 37-46 months.

difference between the restitution amount and the loss amount. This explanation was provided to Contino at a conference on May 17, 2007,[77] and again at his sentencing on June 21, 2007.[78] Thus, his continued focus on this difference is curious.

Second, there was ample evidence, well-known to Contino himself, that would have supported an even greater loss amount than the $800,000 to $1,500,000 range to which he pled. At trial, the government's exhibits suggested that Contino earned over two and a half million dollars from the extortion of EDP Entities and fraud on DoubleClick. See Government Exhibits 27-28; Government's Brief at 20; Presentence Report at ¶¶ 51-52. Specifically, the documents supported a conclusion that Contino earned $1,317,828 from DoubleClick from July 1999 through October 2000, and $1,242,516 from October 2000 through October 21. Id. In addition, the government also had evidence that the EDP Entities and Dominic Fonti lost $594,832 due to the actions perpetrated by Contino. Contino did not need his attorney to tell him what he billed or earned as a result of the criminal conduct he was charged with having committed.

Third, and perhaps most importantly, Contino's entire argument here is artificial. The plea that Contino and his lawyer negotiated with prosecutors was always about the number of months

---

[77] Conf. Tr., 7:10 - 9:11, May 17, 2007.

[78] Sentencing. Tr., 5:19- 7:6, June 21, 2007.

Contino would spend in prison. The calculation of loss amount (which, we repeat, had ample support) was only a means to an end. For the more than six weeks that Contino and the government were involved in negotiations over the plea, the focal point never veered from the number of months that Contino would serve in prison. Contino wanted to plead to 27-33 months, but the government insisted on 37-46 months.

Finally, Martinelli himself does not acknowledge any short-coming with regard to his investigations into the loss amount.[79]

Therefore, while an attorney's failure to investigate can be a basis for an ineffective assistance of counsel claim, this is not such a case. A claim of ineffective assistance for failure to investigate can only be predicated on a claim that a lawyer failed to make "reasonable" investigations. Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005)("[C]ounsel has a duty to make reasonable investigations, and a decision not to investigate will be reasonable only 'to the extent that reasonable professional judgments support the limitations on investigation.'")(citing Strickland, 466 U.S. at 690-91). The claim that a lawyer did not investigate well enough or as much as another a lawyer would have can not by itself establish ineffective assistance of counsel. See, e.g., United States v. Montilla, 85 Fed. Appx 227, 231 (2d Cir. 2003)("To the extent that defendant argues that defense

---

[79] See Martinelli Aff.

counsel could have 'conducted more vigorous pre-trial discovery,' such claims do not 'establish the ineffectiveness of trial counsel.'"(citing <u>United States v. DiTommaso</u>, 817 F.2d 201, 215 (2d Cir. 1987)).

Here, there is ample support for the loss amount which was well-known to Contino and which did not determine the agreed upon sentence range. Under these circumstances, an ineffectiveness argument based on Martinelli's investigation of the loss amount is meritless.

### 3. Martinelli's "Misleading" of Contino with Respect to Sentencing

Contino's final arguments as to why Martinelli rendered ineffective assistance of counsel are that Martinelli misled him with respect to: (1) the likelihood that the Court would impose a lower sentence than the 37-46 month stipulated range; and (2) Martinelli's ability to argue for a sentence below the stipulated range despite the explicit "Type A" restrictions in the plea agreement. Contino argues that he agreed to plea only because of Martinelli's assurances that the Court might sentence him below the stipulated range, and that Martinelli would submit arguments which would convince the Court to impose a lower sentence.

In his moving papers, Contino highlights how early and often he asked Martinelli about the Court's ability to downwardly depart. Contino claims that: "Martinelli indicated that the Court could

impose a sentence below any agreed guideline range. He made it clear that the Court was not bound by the agreement between the government and myself."[80] The very morning of the plea Contino asked Martinelli yet again about the Court's discretion: "Martinelli assured me, once again, that the Judge could do what ever she wanted and that they would try to submit documents and letters that would have the court exercise her discretion to give me a lower sentence. He reminded me again that the agreement did not bind the Court."[81]

Martinelli's version of events is that he told Contino the state of the law, namely that after the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005), courts have the discretion to depart from the Sentencing Guidelines. But, Martinelli admits that perhaps Contino "over-relied on my explanations concerning the power of the court to impose a lesser sentence."[82] Thus, Martinelli believes that "Contino may have been misinformed as to the likelihood of going below the plea on a Booker and 18 U.S.C § 3553 judicial reasonableness analysis and that the ultimate misinformation may, admittedly, be my fault."[83]

---

[80] Contino Aff. ¶ 10.

[81] Contino Aff. ¶ 17.

[82] Martinelli Aff. ¶ 9.

[83] Martinelli Aff. ¶ 19. Martinelli also notes that Contino questioned him about the Court's discretion "more persistently than any client I have ever had." Id., at ¶ 9.

Neither prong of Contino's argument concerning his sentence withstands analysis. First, to the extent that Contino believed he would receive a sentence below the stipulated range, he points to no statement by Martinelli's on the state of the law of judicial discretion concerning sentencing that was not accurate. Moreover, to the extent that Contino relies on any suppositions as to what a sentence might be this can not be the basis for vacating a guilty plea. <u>United States v. Arteca</u>, 411 F.3d 315, 321 (2d Cir. 2005)(predictive errors do not justify vacating a guilty plea); <u>United States v. Sweeney</u>, 878 F.2d 68, 70 (2d Cir. 1989)("The law in this circuit prior to the Sentencing Guidelines was clear that a defendant was not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence. Now that we have the Guidelines, we do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel."). Predictive statements are treated differently from a case where a defense lawyer erroneously provided "factual misinformation" about applicable mandatory minimums, as in <u>Hill v. Ternullo</u>, 510 F.2d 844, 847 (2d Cir. 1975), where vacating a defendant's guilty plea was justified by the fact that defense lawyer told his client that the minimum sentence he would face was two years when in fact the mandatory minimum was five years without parole. Martinelli's statement here, even if misleading, was purely predictive.

Second, as regards Contino's claim that Martinelli wrongly portrayed his ability to argue for a downward departure despite the explicit "Type A" restrictions in the plea agreement, Contino's position is belied by the record evidence that Contino knew about and understood the "Type A" restrictions.  The restrictions were included in the plea agreement, which Contino signed,[84] and later told this Court that he had read and discussed with his lawyer before signing.[85]  This Court explicitly asked Contino about the restrictions at the plea colloquy, and he stated that he understood the restriction.[86]  Further, Contino acknowledges that he was present when Martinelli called the United States Attorney's Office to complain about the "Type A" restrictions,[87] and Martinelli has stated that he discussed the Type A restrictions with Contino. Rebutting a proposed affidavit assertion by Contino's new lawyers that the restrictions were a last minute addition to the plea agreement, Martinelli wrote an email to Contino's new lawyers in which he stated, "[T]he very last sentence of Page 1 ('There was no

---

[84] Plea Agreement, at 4-5.

[85] Plea Tr., 8:18 - 9:1, Dec. 5, 2006.

[86] Plea Tr., 10:6-10, Dec. 5, 2006. (COURT: "Do you understand that you have agreed and the government has agreed not to seek a sentence outside of the stipulated guidelines range, but that you can argue whatever within the guidelines range you ought to be sentenced?" DEFENDANT: "Yes, your honor.").

[87] Contino Aff. ¶ 13.

focus on the A-plea restrictions') is highly inaccurate (we knew about the A-restrictions and explicitly discussed)."[88]

Moreover, any belief Contino had that Martinelli would be able to argue for a lower sentence despite the "Type A" restrictions was borne out by subsequent events. Martinelli, more or less <u>did</u> argue for a lower sentence despite the "Type A" restrictions. In Martinelli's submission to the Probation Office, as well as in his sentencing submission to this Court, Martinelli contested the contents of the plea agreement by arguing that the stipulated loss amount was inflated.[89] Indeed, for its part at least, the government considered Martinelli's arguments to be in violation of the plea agreement.[90] Thus, even if Martinelli did mislead Contino about his ability to argue for a lower sentence, Martinelli in fact argued for a lower sentence, and his failing to secure one does not provide Contino a ground on which to argue ineffective assistance of counsel.

Therefore, Contino's plea was not a product of ineffective assistance of counsel on the ground that Martinelli misled him as to the likelihood of receiving a sentence below the stipulated

---

[88] Contino Exhibit D, (Martinelli Email to Washor, dated June 7, 2007).

[89] <u>See</u> Contino Exhibit B (Martinelli Letter to Probation Office, dated March 19, 2007, at p. 2); Martinelli Letter to the Court, dated May 5, 2007, at p. 4.

[90] <u>See</u> Government Br. at p. 16 ("[I]n the government's view, [Martinelli's submission was] in violation of the plea agreement.").

sentencing range, or as to Martinelli's ability to argue for a sentence below the stipulated range.

## C. Waiver of Collateral Attack

Having found that Contino's plea was not a product of ineffective assistance of counsel, Contino's petition fails on the alternate ground that under the terms of a fully enforceable plea agreement he specifically waived his right to bring a 28 U.S.C. § 2255 petition.

The plea agreement that Contino signed stipulated that "[Contino] will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Sentencing Guidelines Range of 37 to 46 months."[91] The Second Circuit has repeatedly held that such a waiver is enforceable. See United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005). The Court has recognized a very narrow set of exceptions to the general rule of enforceability, where (1) the waiver was not made knowingly, voluntarily, and competently; (2) the sentence imposed was based on constitutionally impermissible factors; (3) the government breached the plea agreement; or (4) the court failed to enunciate any rationale for the sentence. See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000).

---

[91] Plea Agreement, at 5.

Here, there is no reason to conclude that Contino's waiver was anything but knowing and voluntary. Contino was specifically allocuted on this waiver during the colloquy.[92] At no time did Contino ever indicate that he did not understand the consequences of the waiver, or that he received ineffective assistance in connection with the waiver provision. Further, there is no suggestion that the sentence was based on constitutionally impermissible factors, or that the government has breached the plea agreement, or that the Court failed to explain a rationale for its sentence. In sum, there is no basis for permitting Contino to circumvent the stipulations that were contained in his plea agreement.

## Conclusion

For the foregoing reasons, we deny in its entirety Contino's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C § 2255. As petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not issue. See 28 U.S.C. § 2253(c).

---

[92] See Plea Tr, 10:24 - 11:2, Dec. 5, 2006 (COURT: "Do you understand that you have agreed not to file a direct appeal of otherwise challenge any sentence within the stipulated range of 37 - 46 months." DEFENDANT: "Yes, your honor, I do."); Sentencing Tr. 12:23-25 Dec. 5, 2006 ("I think, given the sentence you've waived your right to appeal and to otherwise challenge the sentence in accordance with the plea agreement."); see also Contino Aff. ¶ 21 ("I acknowledge that I responded affirmatively during my plea allocution when the Court asked if I understood the limitations the plea agreement placed on my attorney's ability to seek a below-Guidelines sentence.").

Contino is directed to surrender to the institution designated
by the Bureau of Prisons before 2:00 p.m. on February 25, 2008.

The Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated:    New York, New York
           December 28, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE